# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **CYNTEZ JAMAR FITZGERALD,** | ) | CASE NO. 7:16CV00598 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | By: Norman K. Moon |
| Respondent. | ) | Senior United States District Judge |

Cyntez Jamar Fitzgerald, a Virginia inmate proceeding *pro se*, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on a judgment by the Danville City Circuit Court for first-degree murder and robbery. Respondent filed a motion to dismiss Fitzgerald's § 2254 petition, and Fitzgerald failed to respond, making the matter ripe for disposition. After review of the record, I grant the motion to dismiss.

## I. Factual Background

The Danville City Circuit Court made the following factual findings in addressing Fitzgerald's state habeas petition:

> In the early morning hours of November 12, 2009, [Fitzgerald] separately asked both Joshua Davis and Tyler Turner if they wanted to commit a robbery with him. [Fitzgerald], accompanied by Kaseem Ford, told Davis he was on his way to rob "Brickman" at [Fitzgerald]'s girlfriend's house and asked if Davis wanted to join him. Davis and Turner each declined.
> Shortly before 2:30 a.m. that morning, James "June" Adams was playing cards at Cynthia Ross's house on Washington Street in Danville. Other people were present, including Ross's daughter, who was [Fitzgerald]'s girlfriend. Adams wore earrings, a gold chain, a watch, a ring, and a diamond bracelet. Adams received a phone call and left through the front door, saying he would be back; Ross shut the door behind him. As soon as Ross returned to her kitchen, she heard multiple gunshots. She immediately called 911 and, approximately a minute and a half into that call, there was a final gunshot. The initial shots woke her neighbor, who looked outside to see a body on the opposite side of the street; a few seconds later a car pulled up and someone exited the car and shot the body. A few moments later, Officer J.A. Pulley of the Danville Police Department

responded and found Adams unresponsive, face down, and shot multiple times in the torso. Six feet away lay a Glock .45 caliber pistol.

Adams died of three gunshot wounds, to his chest, shoulder, and thigh. The shoulder wound entered through his back. A bullet recovered from his body matched multiple ten millimeter casings found at the crime scene, and all the ten millimeter casings were fired from the same gun. A .45 caliber casing recovered at the scene had been fired from the Glock. The personal effects recovered from Adams included earrings, but not his bracelet or ring.

At 3:30 or 4 a.m. that morning of November 12, 2009, [Fitzgerald] returned to Davis's home with Ford. [Fitzgerald] told Davis he "got" Brickman, but it "got funky" and "the ten knocked him out of his drawers." [Fitzgerald] complained that it was not worth it because he got only a bracelet and ring but should have got the earrings. [Fitzgerald] also had a gun with him. Davis accompanied Ford and [Fitzgerald] to see Turner. [Fitzgerald] clarified, while speaking with Turner and Davis, that the Brickman was June. He told Turner, "Your boy gone. . . your boy June." The next day, [Fitzgerald] and his girlfriend again approached Turner to ask whether the police had questioned him. Det. David Whitley of the Danville Police Department questioned [Fitzgerald] about the night of Adams's murder, and [Fitzgerald] made certain statements corroborating that he had visited Turner that night.

Curtis McCain, who was jailed with [Fitzgerald], testified that [Fitzgerald] said his charges involved what "was supposed to have been a robbery but, um, the . . . due didn't want to come off the dope so [Fitzgerald] shot him." Later, McCain told [Fitzgerald], "[T]hat's fucked up what you did to June," and [Fitzgerald] replied, "[S]o what . . . bad things happen to good people." A few days later, after [Fitzgerald] met with his attorney, he told McCain that his investigator said McCain was "ratting" on him and threatened McCain.

Crystal Johnson testified that she asked [Fitzgerald] about rumors that he robbed and killed Adams. [Fitzgerald] told her that he and his boys "went over there and things went wrong but he didn't kill nobody."

In his defense, [Fitzgerald] called Tony Mayo to claim that Davis asked Mayo for a pistol three times before Adams's murder and that, after the murder, Davis told Mayo he did not know anything and not to say anything. [Fitzgerald] attempted to call Demetric Venable, who invoked the Fifth Amendment. [Fitzgerald] then called his investigator, who claimed that Venable had told her that he was the getaway driver when Adams was murdered, with Chris Moore, [Fitzgerald], and Davis in the car. The investigator claimed Venable told her that Davis took the jewelry and shot Adams.

In its rebuttal case, the Commonwealth called a witness to impeach Mayo's credibility. It also called Venable to dispute the investigator's testimony and reiterate his grand jury testimony, which also contradicted the investigator's testimony.

*Fitzgerald v. Clarke*, No. CL15-277, slip op. at 2-5 (Va. Cir. Ct. Aug. 6, 2015) (footnote omitted).

2

## II. Procedural History

The jury convicted Fitzgerald of first-degree murder and robbery, and the Danville City Circuit Court imposed the jury's sentence of life plus five years' imprisonment. Fitzgerald appealed, but the Virginia Court of Appeals and the Virginia Supreme Court denied his petitions. In 2015, Fitzgerald timely filed a habeas petition in the Danville City Circuit Court, raising two claims. After the respondent moved to dismiss, Fitzgerald filed a motion to amend, attempting to add three claims. The respondent objected to Fitzgerald's motion, but the circuit court denied Fitzgerald's habeas petition without mentioning or addressing the "new" claims from his motion to amend.

Fitzgerald appealed, but he only asserted the two claims from his petition; he did not raise the three claims from his motion to amend; and he did not challenge the circuit court's failure to address his motion. The Virginia Supreme Court refused his appeal.

## III. Claims[1]

In his current petition, Fitzgerald raises the same five claims as his circuit court habeas petition and motion to amend:

1. The trial court violated his Sixth Amendment right to due process by failing to remove a juror for cause after learning of private communications between a juror and a family member of the victim;

2. Trial counsel was ineffective for failing to call defense witness Sidney Creekmore;

---

[1] I have renumbered Claims 3(A), 3(B), and 3(C) from Fitzgerald's federal habeas petition as Claims 3, 4, and 5, respectively. In the interest of clarity, I have also made minor grammatical and syntactical changes.

3

3. The Commonwealth's Attorney violated his Fifth, Sixth, and Fourteenth Amendment rights by filing and presenting information to the Grand Jury with "multiplication of offenses" that obscures the specific charges and right to notice pursuant to Va. Code § 19.2-220;

4. The Commonwealth's Attorney and the Grand Jury violated his Fifth, Sixth, and Fourteenth Amendment rights to due process by charging Fitzgerald with one count of capital murder, pursuant to Va. Code § 18.2-31(4), along with two or more independent offenses which prejudiced his right to a fair trial; and

5. The Commonwealth's Attorney violated his Fifth, Sixth, and Fourteenth Amendment rights to due process by filing a "sundry indictment" with distinct felonies knowing that the law of the Commonwealth does not allow a defendant to be charged in one count with two or more independent offenses to prevent confusion, multiplication of the issues, and prejudice to the defendant's right to a fair trial.

### IV. Standard of Review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under 28 U.S.C. § 2254(d), however, the federal habeas court may not grant a writ of habeas corpus based on any claim that a state court decided on the merits unless that adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Under this standard, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could agree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (omitting internal quotations).

To state a constitutional claim for ineffective assistance of counsel, a petitioner must satisfy the two-pronged *Strickland v. Washington* test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 686-687 (1984). A petitioner must overcome "a strong presumption" that counsel's tactical decisions during the representation were reasonably competent, and the court may adjudge counsel's performance deficient only when a petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 689-90.[2] Additionally, when reviewing a *Strickland* claim under the AEDPA, the court's review is "doubly" deferential. *See Harrington*, 562 U.S. at 105.

### V.  Discussion

#### A. Exhaustion

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)). To meet the exhaustion

---

[2] "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough*, 540 U.S. at 8.

requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (internal quotation marks and citation omitted). "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288 (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)).

Fitzgerald properly exhausted Claims 1 and 2 by presenting them to the Virginia Supreme Court on his state habeas appeal. However, Patterson never raised Claims 3 through 5 in the Virginia Supreme Court, and he cannot return to state court because his direct appeal is final and any additional state habeas proceeding would be both untimely and successive. *See* Va. Code §§ 8.01-654(A), 8.01-654(B) (A petitioner must file a writ of habeas corpus within one year of the conclusion of the direct review process and include all allegations the facts of which are known to petitioner at the time of filing. A habeas petition "shall certify that the petitioner has filed no prior habeas corpus petitions attacking the conviction or probation revocation.").[3] Thus, Claims 3 through 5 are exhausted but defaulted under *Baker*.

### B. Procedural Default

Further, the United States Supreme Court has long held that a state prisoner's habeas claims may not be entertained by a federal court "when (1) 'a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.'" *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)). A procedural rule is adequate "if it is regularly or consistently applied by the state

---

[3] Fitzgerald's direct review process ended in 2015.

court," and independent "if it does not 'depend[] on a federal constitutional ruling.'" *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

In Claim 1, Fitzgerald contends that he was denied a right to a fair trial when a juror spoke with a member of the victim's family and the court failed to: investigate the juror, remove the juror, or declare a mistrial. On habeas review, the Danville City Circuit Court found Claim 1 procedurally defaulted under *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), because Fitzgerald could have raised the issue at trial and on direct appeal, but failed to do so. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006) (*Parrigan* is an adequate and independent bar.).[4]

Further, Fitzgerald failed to raise the prosecutorial misconduct and due process violations in Claims 3 through 5 at trial or on direct appeal; therefore, even if Fitzgerald had presented the claims to the Virginia Supreme Court in state habeas, they would have been *Parrigan*-barred. *See Jackson v. Warden of Sussex I State Prison*, 627 S.E.2d 776, 788 (Va. 2006); *Frazier v. Johnson*, 2010 WL 4395434, at *4 (E.D. Va. Oct. 29, 2010) (holding that due process claim was procedurally defaulted on federal habeas review where, if petitioner had raised the issue in state habeas, the state court would have found that the claim was barred by *Parrigan*).

*C. Excuse for Default*

---

[4] Moreover, the state habeas court concluded that Fitzgerald's allegation that the trial court failed to investigate the juror's communications was "factually incorrect":
> Rather than conduct no investigation, the Court determined that there was a brief encounter between a juror and someone in the gallery, merely a greeting without any discussion. After the Court gave both sides the opportunity to consider whether they would like to take further action, both sides were satisfied and declined any further action. The Court offered to strike the prospective juror, but [Fitzgerald]'s counsel made a tactical decision not to have the juror stricken because he believed the juror's background as a retired law enforcement officer would benefit Fitzgerald during deliberations.

*Fitzgerald*, No. CL15-277, slip op. at 5.

7

"If a claim is defaulted, then petitioner must fail on that claim unless he can show that cause and prejudice or a fundamental miscarriage of justice might excuse his default." *Bell v. True*, 413 F. Supp. 2d 657, 676 (W.D. Va. 2006) (citing *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998)). The "cause" prong requires a petitioner to demonstrate that there were "objective factors," external to his defense, which impeded him from raising his claim at an earlier stage. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The "prejudice" prong requires a petitioner to show that the alleged constitutional violation worked to his actual and substantial disadvantage, infecting his entire trial with error of a constitutional magnitude. *Id.* at 495. "[T]he 'cause and prejudice' test is framed in the conjunctive, the absence of cause makes unnecessary an inquiry into prejudice." *Davis v. Allsbrooks*, 778 F.2d 168, 176 (4th Cir. 1985). Meanwhile, the fundamental miscarriage of justice exception requires a petitioner to proffer a colorable claim of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 324-25 (1995).

Fitzgerald never offers any information regarding his failure to prevent default and he does not allege a colorable claim of actual innocence under *Schlup*.[5] Moreover, Fitzgerald cannot satisfy the cause requirement because the facts underlying Fitzgerald's claims existed and were discoverable upon a reasonably diligent investigation at trial: Fitzgerald was aware of the court's investigation of the juror and the charges listed on the indictment. *See Vinson*, 436 F.3d at 417 (quoting *Basden v. Lee*, 290 F.3d 602, 618 (4th Cir. 2002)) (holding that a petitioner may not establish cause "by pointing to evidence that the petitioner 'knew about or could have discovered' through a 'reasonable investigation.'").

---

[5] Fitzgerald never directly addresses cause and prejudice or a fundamental miscarriage of justice in his petition. He also failed to reply to the motion to dismiss.

Fitzgerald fails to demonstrate that an objective factor, external to his defense, impeded him from raising his claims at an earlier stage; therefore, Claims 1, 3, 4, and 5 are barred from federal habeas review.

*D. Merits*

In Claim 2, Fitzgerald contends that counsel was ineffective for failing to call Sidney Creekmore to testify even though Fitzgerald told counsel about Creekmore's exculpatory testimony and counsel arranged for Creekmore's transportation to the courthouse. Specifically, Fitzgerald alleges that Creekmore would have impeached Joshua Davis's testimony, revealed Davis's bias, and attacked the "unwarranted credibility" of the Commonwealth's witnesses, who allegedly "stood to gain from their testimonies." Pet'r's Pet. 29.[6]

First, Fitzgerald fails to submit Creekmore's putative testimony in an affidavit. On habeas review, the circuit court concluded that Fitzgerald's claim failed because he did not proffer an affidavit detailing what Creekmore's testimony would have been. "Instead, he offered only a brief, conclusory statement that Creekmore 'had information about [Davis's] alleged confession of accounts [in] which he substitute[d] the Petitioner in place of himself' that would cast doubt on Davis's credibility and suggest Davis 'could likely be the perpetrator.'"[7]

---

[6] Fitzgerald cites *Karnes v. Commonwealth*, 99 S.E. 562 (Va. 1919) in arguing that counsel, "acting in an interest not of his client . . . made a mockery of the justice system." Pet'r's Pet. 30. In *Karnes*, the Virginia Supreme Court of Appeals found error in a murder conviction when (1) a trial court refused the defendant's proposed jury instructions stating that the defendant's mere presence at the scene of the crime, without more evidence, was not sufficient to justify a conviction; and (2) the Commonwealth only proved that the defendant was with the victim when she was shot, and did not establish a motive, a provocation, or any circumstantial evidence tending to show the defendant's guilt. Fitzgerald's reliance on *Karnes* is unavailing: Fitzgerald does not complain about jury instructions or insufficient evidence in Claim 2; instead, he argues that counsel's decision not to call Creekmore was ineffective assistance.

[7] Fitzgerald uses identical language in his federal habeas petition. Pet'r's Pet. 27.

*Fitzgerald*, No. CL15-277, slip op. at 6-7. I agree with the circuit court's analysis. At the threshold, Fitzgerald cannot prove that counsel was ineffective for failing to call a witness when he has not shown what the witness's testimony would have been. *See Bassette v. Thompson*, 915 F.2d 932 (4th Cir. 1990) ("The great failing of the appellant on his claim that other evidence should have been presented . . . is the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called."); *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that habeas petitioners must support their claims with evidence; unsubstantiated self-serving statements cannot form the basis for habeas relief).

Second, Fitzgerald fails to proffer evidence that Creekmore would have offered exculpatory evidence: Creekmore explicitly told counsel's investigator that he "would not testify to anything Davis said as he did not want to be a 'snitch.'" Aff. of Steven P. Milani, ECF No. 10, Attach. 6. On habeas review, the Danville City Circuit Court held that:

> [Creekmore] told the defense investigator during his final two interviews that he would not testify regarding Davis's alleged statement. The Court therefore finds that Creekmore would not have offered exculpatory evidence. Even if he reversed his stated refusal to testify and told the jury that Davis was the shooter, he would have also named Fitzgerald as a principal in the crime.[8]

*Fitzgerald,* No. CL15-277, slip op. at 7. I agree with the circuit court: Counsel was not ineffective for failing to call Creekmore as a witness because Creekmore's statements closely paralleled Venable's by still implicating Fitzgerald as a principal to the crime. Therefore,

---

[8] In Virginia, "every principal in the second degree and every accessory before the fact may be indicted, tried, convicted, and punished in all respects as if a principal in the first degree." Va. Code. § 18.2-18 (Section 18.2-18 does include limited exceptions where a principal in the second degree or accessory cannot be charged as a principal in the first degree, but none apply in Fitzgerald's case.).

10

Creekmore "could not have testified to any additional exculpatory evidence in defense of Fitzgerald." *Id.* [9]

Third, Fitzgerald fails to show that counsel's decision not to call Creekmore was an unreasonable strategic decision under *Strickland*. On habeas review, the circuit court concluded:

> [Not calling Creekmore] was a strategic decision that cannot be second guessed in habeas. *See Morva v. Warden*, 285 Va. 511, 520, 741 S.E.2d 781, 789 (2013) (neither *Strickland* prong satisfied when counsel failed to offer double-edged evidence); *Shaikh v. Johnson*, 276 Va. 537, 548, 666 S.E.2d 325, 330 (2008) (habeas petitioner must overcome strong presumption that challenged action was strong trial strategy); *Lewis v. Warden*, 274 Va. 93, 116, 645 S.E.2d 492, 505 (2007) (neither *Strickland* prong satisfied when counsel failed to offer double-edged evidence); *Bunch v. Thompson*, 949 F.2d 1354, 1363-64 (4th Cir. 1991) (habeas court should not second guess an attorney's decision on how best to present a defense).
>
> [Fitzgerald]'s own exhibit demonstrated that counsel had Creekmore produced for trial. The decision not to call Creekmore, therefore, was not due to a failure to investigate or to prepare, but rather based in trial tactics. Even if [Fitzgerald] wished counsel to call Creekmore, that fact is irrelevant. A defendant has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In all other matters, a defendant who has chosen to be represented by counsel must "accept the consequences of the lawyer's decisions . . . ." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).

*Fitzgerald*, No. CL15-277, slip op. at 7-8. I agree with the state court's ruling: federal courts reviewing *Strickland* claims "give counsel wide latitude in determining which witnesses to call as part of their trial strategy." *United States v. Dyess*, 730 F3d 354, 364 (4th Cir. 2013); *see also Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of [] evidence they can choose not to introduce.'"). After Creekmore explicitly

---

[9] After Venable asserted his Fifth Amendment right not to testify, counsel's investigator testified as to Venable's prior statements: "[Venable] saw Davis shoot the victim and noted that Fitzgerald was unarmed but present and a participant." *Id.*

11

refused to testify regarding Davis's statements, counsel could have reasonably recognized that was Creekmore not an exculpatory witness, but instead a significant potential liability: Creekmore had made statements that would have confirmed Fitzgerald's participation in the crime as either a principal or an accessory. Accordingly, counsel's failure to call Creekmore was not deficient performance under *Strickland*.

Lastly, Fitzgerald has failed to demonstrate prejudice because he has not shown that calling Creekmore would have resulted in the substantial likelihood of a different verdict. On habeas review, the state court concluded that Fitzgerald was unable to establish prejudice because so many witnesses testified against him; therefore, "the impeachment of any one witness would not have created a substantial likelihood of a different verdict." *Fitzgerald*, No. CL15-277, slip op. at 8. Further, despite Fitzgerald's assertion that Davis was the Commonwealth's "star witness," "the Commonwealth's case did not hinge on [Davis]." *Id.* Several witnesses supported Davis's testimony, including: three witnesses that stated Fitzgerald attempted to solicit help with a robbery on November 12, 2009, two witnesses that testified Fitzgerald confessed his involvement in the murder and robbery to them, and one witness that said Fitzgerald confirmed that he was present at the victim's murder. Further, "[Fitzgerald] himself made corroborating statements when questioned by police. In other words, [Fitzgerald] could not have established prejudice, even if he had properly laid a factual foundation for his claim that Creekmore had relevant testimony." *Id.* I agree with the state court's extensive analysis. Fitzgerald fails to show that Creekmore's putative testimony would have created a substantial likelihood of a not guilty verdict.

I conclude that the state court's adjudication was not contrary to, or an unreasonable application of, *Strickland*, or an unreasonable determination of facts. Fitzgerald fails to

demonstrate either deficient performance or prejudice; therefore, I grant the motion to dismiss as to Claim 2.

## VI. Conclusion

For the reasons stated, I **GRANT** the motion to dismiss. Fitzgerald's petition is procedurally defaulted as to Claims 1, 3, 4, and 5, and Claim 2 is without merit. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to Fitzgerald and to counsel of record for Respondent. Further, concluding that petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability is **DENIED**.

**ENTER:** This <u>1st</u> day of September, 2017.

                                                    /s/ Norman K. Moon
                                                    NORMAN K. MOON
                                                    UNITED STATES DISTRICT JUDGE